UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRENDAN A. HEALEY,                )
                                  )
    Plaintiff                     )
                                  )
v.                                )   No. 1:13-CV-00101-DBH
                                  )
SOCIAL SECURITY ADMINISTRATION    )
COMMISSIONER,                     )
                                  )
    Defendant                     )

# REPORT AND RECOMMENDED DECISION

After a hearing on Plaintiff Brendan Healey's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff does not suffer from any severe impairments. Defendant, therefore, denied Plaintiff's request for disability benefits.

Following a review of the record, and consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court reverse the administrative decision and remand Plaintiff's Title II claim for further proceedings.

## THE ADMINISTRATIVE FINDINGS

Because the Appeals Council "found no reason" to review that decision, the Acting Commissioner's final decision is the February 15, 2012, decision of the Administrative Law Judge (ALJ). The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.

At step 1 of the sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements of Title II through December 31, 2013, and has not engaged in substantial gainful activity from April 30, 2009, the date of alleged onset of disability. (ALJ's Decision,

Findings and Conclusions, ¶¶ 1, 2.) In the second stage of the analysis, the ALJ determined that Plaintiff has the following medically determinable impairments: depressive disorder not otherwise specified (NOS), cognitive disorder NOS, undifferentiated somatoform disorder NOS, and attention deficit disorder. (*Id.* ¶ 3.) The ALJ found, however, that Plaintiff's impairments have not significantly limited his ability to perform basic work-related activities for 12 consecutive months, and, therefore, Plaintiff does not have a severe impairment or combination of impairments. (*Id.* ¶ 4.) Finding no severe impairments at step 2, the ALJ concluded that Plaintiff failed to establish disability between the alleged onset date and the date of decision. (*Id.* ¶¶ 4, 5.)

## PLAINTIFF'S STATEMENT OF ERRORS

### A. Standard of Review

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Background

Plaintiff's alleged disability arises from a fall that occurred in February 2009. The incident occurred when Plaintiff, while eating, began to choke on the food, passed out, and struck his head on a granite table as he fell to the ground. Plaintiff's primary care provider, Vincent Michaud MD,

diagnosed a closed head injury with concussive syndrome and ordered a neurological referral. (Admin. R. Ex. 4F, PageID #320.) Plaintiff's subjective report of symptoms included confusion, the inability to perform work as an investment consultant, and difficulty balancing his checkbook. (*Id.*)

In August 2009, consulting physician Brian Stahl Ph.D., after reviewing records prepared through a May 26, 2009, evaluation by Dr. Michaud, found that Plaintiff suffered from an affective disorder (depressive disorder, NOS) that was properly categorized as "non severe" for social security purposes. (Ex. 6F.) Dr. Stahl noted that Plaintiff's evaluations did not show evidence of memory, concentration, or attention difficulties, and showed intact speech and language with normal mood and affect. (PageID # 457.) In a subsequent evaluation, Dr. Michaud determined that Plaintiff suffered from post-concussive syndrome and that there "may be a component of depression." (Ex. 7F, PageID # 459.) As part of his treatment plan, Plaintiff reluctantly agreed to an appointment with psychiatry but declined a recommendation of Aricept 5 mg daily. (*Id.*)

Plaintiff attended a neuropsychological evaluation on December 22, 2009, with Dr. Robert L. Gallon Ph.D. (Ex. 10F.) Dr. Gallon sought to "sort out objective cognitive impairments that may have resulted from [the] accident of February 2009 from more psychologically-based difficulties." (PageID # 526.) In his report, Dr. Gallon writes that Plaintiff was experiencing post-injury frustration with being unable to perform his work and having poor memory, which frustration culminated in Plaintiff's decision to leave work in May 2009. Plaintiff also reported to Dr. Gallon that he was experiencing numerous other negative mood and cognitive changes. (*Id.* # 527.)

The tests that Dr. Gallon conducted of Plaintiff's cognitive functioning "suggest against general cognitive decline," reveal "no impairment in any major area of intellectual functioning,"

3

reflect "memory index scores in the high average range," show no word retrieval difficulty, and otherwise reveal nothing that would preclude unskilled work. (*Id.* # 529-30.) Dr. Gallon did note, however, "strong indications of a psychological etiology" (*Id.* # 530), opined that prognosis was good if Plaintiff was willing to find "psychological solutions," and recommended an anti-depressant. (*Id.* # 530-31.)

In a January 4, 2010, psychiatric review technique, consulting physician David Houston Ph.D. reviewed Plaintiff's medical records, including Dr. Gallon's neuropsychological evaluation, and found only a non-severe mental impairment. (Ex. 11F.)

In April 2010, Plaintiff was admitted to the Eastern Maine Medical Center for what was described upon discharge as a "subacute left lacunar infarct identified by MRI with persistent sensory deficit on the right side of his body." (Ex. 13F, PageID # 557.) This event is referred to later in the record as the CVA event (cerebrovascular accident).

In June 2010, Michal Vytopil M.D. communicated with Dr. Michaud in a follow-up for Plaintiff's post-concussive syndrome. Dr. Vytopil wrote that he "was happy to hear that many of [Plaintiff's] cognitive and mood difficulties . . . have significantly improved, and seem to be still improving." (Ex. 18F, PageID # 603.) In that report, Dr. Vytopil offered suggestions on medication for secondary stroke prevention. (*Id.*)

Dr. Michaud completed a physical residual functional capacity assessment in September 2010. (Ex. 14F.) At that time, Dr. Michaud assessed substantial limitations in Plaintiff's physical abilities secondary to the combined effects of the concussive injury and the CVA. (PageID # 580.) More particularly, assessing Plaintiff at less than sedentary capacity, Dr. Michaud found Plaintiff to have an inability to stand and walk for even two hours in an eight-hour workday, an inability to stand on a continuous basis for more than five minutes without changing position, a need for

Plaintiff to lie down often due to fatigue, a significant limitation in the right upper extremity secondary to CVA-related numbness and weakness, significant environmental restrictions, cognitive impairment, and a need to be absent from work "daily" due to impairments and treatment. (*Id.* # 580-83.)

At Plaintiff's initial hearing before the ALJ on April 13, 2011, Peter Webber M.D., a medical expert witness, testified that there was no reason to doubt the diagnoses concerning the concussion and the cerebrovascular accident as far as identifying medically determinable impairments, but noted that Plaintiff's case included only subjective symptoms and lacked objective evidence of neurological impairment. (April 2011 Hr'g Tr., PageID # 818-19.) Dr. Webber stated that there was no objective evidence to support the degree of physical limitation resulting from the diagnosed conditions. In his terms, "I'm very limited in what I can say as far as ongoing physical disturbances because of these two entities." (*Id.* # 816.)

The ALJ called a separate expert to address any mental limitations. The psychological expert, Dr. Tingley, described the mental issues as "organic mental disorders" secondary to post-concussive syndrome and complicated by the more recent CVA. (*Id.* # 820.) Concerning Dr. Gallon's neuropsychological evaluation, Dr. Tingley testified that Plaintiff's memory had not been "comprehensively assessed" (*Id.* # 821), and that in order to achieve a more comprehensive evaluation, he would expect more specific testing to determine memory deficits. (*Id.* # 822.) With this evidence, the ALJ asked counsel whether, if the hearing were continued, Plaintiff would be able to secure supplemental neuropsychological testing to address any "further intellectual or memory or executive functioning loss." (*Id.* # 823-24.) When counsel replied in the affirmative, the ALJ continued the hearing for that purpose.

At Plaintiff's election, a referral was made to Anthony Podraza Ph.D., who completed a

5

neuropsychological evaluation in June 2011. (Ex. 24F.) In his report, Dr. Podraza notes that Plaintiff's current complaint is of "significant memory, attention/concentration, organization and planning deficits as well as personality change." (PageID # 721.) On examination, Dr. Podraza found Plaintiff to be "currently performing in the high average range of intellectual ability with equivalent verbal and nonverbal skills" and with most measures falling within normal limits (*Id.* # 727), but with "mild" impairment in memory performance and, in particular, deficits in executive functioning, attention, and concentration (*Id.* # 724-25). Dr. Podraza found the test results and medical records to be "suggestive of a type of attention deficit disorder" and suspected "that [Plaintiff's] current emotional status may be playing a large role in maintenance of his symptoms." (*Id.* # 727.) Dr. Podraza noted that most individuals exhibit complete recovery from closed-head injuries within three to six months, but that a prior history of psychological trauma, depression, and chronic pain are known to complicate recovery. (*Id.*) Dr. Podraza determined that traumatic brain injury was an "unlikely" cause of Plaintiff's symptoms as of the date of his evaluation and that Plaintiff should recognize "that his deficits are really rather mild and likely to resolve over time with treatment or can be compensated for, if he is so inclined." (*Id.* # 729.) Nevertheless, Dr. Podraza opined:

> Although the question of level of disability is difficult to answer, it seems clear that [Plaintiff] is unable [to] maintain competitive gainful employment at this time due to his emotional problems. Simply put, his emotional response to his hypoxic episode, traumatic brain injury, and subsequent stroke has been no short of catastrophic. If he is granted disability, I would ask that it be periodically reviewed in light of the fact that he has little objective evidence of a significant neurocognitive disorder and may make significant progress in individual psychotherapy.

(*Id.* # 729.) The relevant medical diagnoses offered in Dr. Podraza's report are: cognitive disorder (NOS), possibly secondary to stroke; attention deficit hyperactivity disorder (NOS); major depressive disorder, recurrent moderate to severe; and undifferentiated somatoform disorder

6

(NOS). (*Id.* #728.)

On January 23, 2012, the ALJ convened a supplemental hearing. During the hearing, the ALJ noted that the purpose of the referral was to "establish a medically-determined impairment." (Tr. of 2012 Hr'g, PageID # 59.) Plaintiff's counsel maintained that Dr. Podraza's report established the appropriate diagnoses and etiology, which consists of the confluence of the head injury, CVA, and emotional response. (*Id.* # 59-60.)

At the hearing, the ALJ elicited testimony from a vocational expert and from Peter Webber M.D. Dr. Tingley was not called as a witness. Notably, Dr. Webber was called at the prior hearing to address physical impairments. However, at the supplemental hearing, the ALJ asked Dr. Webber to address both physical and mental limitations. In response to the ALJ's inquiry, including the impact on his findings of Dr. Podraza's report, Dr. Webber testified that on the physical side, Plaintiff's chart would make it hard to "use a listing at all to address any of these physical problems." (*Id.* # 61-62.) He did not deny the existence of medically determinable impairment, however. Turning to the psychological issue, Dr. Webber reviewed Dr. Podraza's report and opined that "obviously there are deficits here," including both physical and mental, but that, ultimately, Dr. Webber was in "a bit in never-never-land" given Dr. Podraza's opinion that Plaintiff "would be functional" but for the emotional response to his experience. (*Id.* # 62.) Dr. Webber testified that Plaintiff could do light work, at the least; that there might be "some interference" with following orders and remembering things; and that "not being a psychologist, it's hard for me to be really clear as far as evaluating that part of it." (*Id.* # 62-63.) On examination by counsel, Dr. Webber opined that the stroke was "suggestive of a little more severity because it does damage actual brain tissue, and I would think that that could have more likelihood to have a depression associated with it." (*Id.* # 64.)

7

The ALJ did not pose a hypothetical residual functional capacity question for the vocational expert. Plaintiff's counsel, however, asked two different hypothetical questions. One assumed Dr. Michaud's dire physical residual functional capacity assessment, and the other asked the expert not to account for any physical impairment, but to assume a marked limitation in maintaining attention for two hours and completing a normal workday and workweek without psychological interruptions, coupled with a need for an "unreasonable number and length of rest-periods" impacting performance up to two-thirds of a day. (*Id.* # 66-67.) The vocational expert testified that either situation would preclude the performance of substantial gainful activity.

## C. Discussion

Plaintiff argues that the ALJ erred at step 2 by mischaracterizing the evidence, dismissing the medical findings of two doctors simply because they could not agree on etiology, failing to consider the combined impact of all impairments, and evaluating the raw medical data independently without any supportive expert opinion. (Statement of Errors at 1-12, ECF No. 16.) Plaintiff contends that the ALJ's error is not harmless because the ALJ relied on the psychiatric review technique of a consulting physician who did not review material evidence gathered after Plaintiff's first hearing, which evidence was gathered at the direction of the ALJ to clarify ambiguities in the record. (*Id.* at 12-13.)

### 1. *The step 2 standard and the harmless error rule*

At step 2 of the sequential evaluation process, the ALJ must consider the severity of a claimant's impairments. The claimant has the burden to prove the existence of a severe, medically determinable, physical or mental impairment or a severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result

in death or have lasted or be expected to last for a continuous period of at least 12 months. *Id.* § 416.909.

The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28). At step 2, only medical evidence may be used to support a finding of severe impairment. 20 C.F.R. § 416.928.

If the Court finds error at the second stage, remand is not inevitable. Because Plaintiff must demonstrate a disabling degree of limitation resulting from his impairment(s), any error at step 2 is generally deemed harmless unless Plaintiff can demonstrate that the error proved outcome determinative at a later stage of the process. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09-cv-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at step 2 is uniformly considered harmless . . . unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

## 2. *Discussion*

In his fourth finding of fact and conclusion of law, the ALJ found that Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) his ability to perform basic work-related activities for 12 consecutive months. The ALJ, therefore, concluded that Plaintiff was not under a disability within the relevant timeframe.

The central issue in this case is the ALJ's finding concerning mental impairment. On this record, the ALJ appropriately found that Plaintiff has medically determinable mental impairments. (PageID # 43.) The ALJ subsequently performed the psychiatric review technique. He determined that there was only mild limitation in the three areas of functioning, and that there were no episodes of decompensation of extended duration. (*Id.* # 43-44.) Based on that assessment, the ALJ found no severe impairment.

The ALJ's determination, however, is based on the ALJ's interpretation of raw medical data without the benefit of an expert opinion. In particular, the ALJ's psychiatric review technique finding concerning concentration is not supported by substantial evidence. There is no post-CVA (post April 2010) expert opinion of record that supports the ALJ's finding of only mild impairment in the third category B area of mental functioning. This does not mean that the ALJ's reasoning is necessarily flawed, only that "a critical evidentiary piece is missing" because no expert has reviewed the supplemental neuropsychological evaluation report and found it to constitute insufficient evidence of disability. *Bond v. Soc. Sec. Admin. Comm'r*, No. 1:11-CV-00054-JAW, 2012 WL 313727, at *10 (D. Me. Jan. 30, 2012) (rec. dec., *adopted* Feb. 21, 2012). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by . . . judging matters entrusted to experts." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999). Significantly, the error is not harmless given the functional assessment offered by Dr. Podraza, particularly because a fair reading of Dr. Webber's testimony does not support the rejection of Dr. Podraza's opinion.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court reverse Defendant's final administrative decision and remand Plaintiff's Title II claim for further proceedings.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

April 11, 2014